Petitioner. Thank you. May it please the court, the issue in this case is whether the National Labor Relations Board erred. Just a positive, I'm sorry to pause you Mr. Carp, so we're gonna have, I guess we will have you go first if that's all right with my colleagues. The the day sheet of course lists the petitioner as the NLRB which initiated this, but I think it does make sense to hear from Oakrheem first and so yeah I think we'll go ahead and do that. Let's go ahead and I'm sorry for interrupting you Mr. Carp, go right ahead. No, thank you very much your honor and may I'd like to perhaps reserve three minutes for rebuttal? Yes. So the issue in this case is whether the board erred when it denied us an evidentiary hearing to resolve our objection to an election. I'd like to first address what the board's answering brief calls a threshold issue, which is whether in our offer of proof we were required to prefer evidence that the supervisor who we contend was handing out union cards, Angela Makaba, performed duties that made her a statutory supervisor under section 211 of the National Labor Relations Act. The answer is no, we were not required to refer such evidence for the simple reason that Makaba's status as a statutory supervisor wasn't in dispute. That makes this case clearly distinguishable from the key case on which the board relies, which is the unpublished East Valley Glendora Hospital that this court decided in 2020 and in that case the whole point of the employer's objection was the parties were disputing whether the employee monitoring the election on behalf of the union was or was not a statutory supervisor. So of course it made perfect sense that the employer would be required to prefer what evidence it had to prove its case that the employee was a statutory supervisor. But here there was no dispute about Makaba's supervisory status. On the contrary, both parties excluded her, her even though the parties did dispute another position, medical records clerk who were permitted to vote provisionally subject to challenge by the employer. So just to be just to be clear on your position, your position is it's enough for a prima facie case just to state that there was a supervisor involved, you don't have to say anything else if there's nobody who's taking issue with that? I just want to understand, I just want to understand what you think is necessary to say in an offer of proof here in this situation. That's exactly right, Your Honor. At the offer of proof stage, if there's no indication it's in dispute, it's sufficient to state a supervisor engaged in this misconduct. When you say that there's no dispute, are you just saying that the NLRB hadn't addressed the issue? Are you saying they stipulated that she was a supervisor? I don't think I can claim that there was a stipulation, but what I mean by no dispute is the parties excluded the position, her position, from the unit. Correct, and the NLRB's position, as I understand it, is that's a separate decision. One of these things is not, they're not concentric circles, there might be a Venn diagram, but they're different. What's your response? I absolutely agree, Your Honor. If we have a hearing that we're requesting, the union and the board have not waived the ability, it would still be our requirement to show, yes, that Makaba's duties made her a statutory supervisor. The board and the union have not conceded that she is, but my point is that the offer of proof stage, there was no reason for us to know and therefore prefer evidence that we've got to prefer evidence of her statutory duties, because there's no indication that there was a dispute about that. Mr. Kirkland? That was excluded from the union. Does, would the offer of proof, or I guess is your position, I guess I'm asking what difference would it make given the relatively small subset of employees that she may have supervised relative to the margin going to the materiality issue? I don't think your offer suggests anything material about this issue of soliciting union cards from employees. That was inherently coercive. I'm sorry, just to clarify, you said soliciting. Your offer of proof says passing out, and that does seem to be perhaps an important difference. I misspoke. You're absolutely right. Passing out. The board, the board has never claimed that that is a difference, but you're right. They prefer, says passing out union cards. But there's never been any claim that that means that there's not inherent coercion. So, assuming that we're able to prove inherent coercion, I understand your Honor's question to be, so what? I mean, and the board is right. There was a lopsided vote in favor of the union. But that's not enough to deny our objection without a hearing, because there are five factors under the Harper site test. The test is not, if it's not close like this, well, then you can go ahead and deny the objection without a hearing. I mean, there are four other factors, and the board is accurate that our offer of proof. We were unable to address some of those factors, such as the extent to which Machaba's misconduct became known to other employees or the lingering effect to other employees. I mean, they're right. The offer of proof does not address that. But our point is, that's the type of evidence that we would get from non supervisory employees. And this court in Valley Bakery said it's unreasonable to expect an employee to document its objections with the kind of evidence that realistically could be uncovered only by subpoena and adversarial hearing to get evidence from non supervisory employees. So it's error for the board to deny us a hearing on the ground that we haven't preferred evidence relevant to the harbor side factors that the hearing is designed to produce. Another board. I think that there's contention between the parties is it's the offer of proof sufficient to if it's believed to prove the misconduct. In other words, the board and the regional director indicated that well, it's hearsay, so that's not enough to prove that Machaba engaged in the misconduct. Uh, and specifically, the two employees, Administrator Savino on barrage and director of nurses, Valerie Martin Taft, would testify to Machaba told them that she was passing out union cards. And the board is incorrect that assuming that's hearsay, that that's not enough at the offer of proof stage. NLRB versus Valley Bakery is right on point because the employer's offer of proof was pure hearsay. Personnel director in the offer of proof would testify that an employee had told her that the union had made coercive statements to that employee and others. And this court reversed the board's denial of an evidentiary hearing on the ground that the court construes all factual assertions most favorably to the accepting party. So the preferred hearsay was at least circumstantial evidence of the objectionable conduct sufficient to require an evidentiary hearing. Sir, curve, I guess coming back to this question of the materiality. Um, do we or does the board have a case in which, um, the margin had been so wide? I mean, I appreciate your point that it's a margin here, not dispositive. I was unable to find a case with an equally large margin. But the principles of the cases that we've cited is that it's a multi factor test. It's clear that not you don't have to satisfy all five. Um, we don't satisfy the margin of victory factor that weighs against us. Uh, but look, there were seven subordinates. So that's that's seven. Um, and the evidentiary hearing we'd have the opportunity through subpoena and cross examination to develop how many other employees knew about it. And if sufficient, if a sufficient number of employees knew about it, that could spread the taint to a significant number to affect the election. And it's just premature at the offer of proof stage to deny hearing on the ground that there aren't enough subordinates to equal the margin of victory. Therefore, deny the objection without a hearing. Those were the key issues that I came to address. Be happy to address any other questions. Otherwise, I'd asked to save my time for rebuttal, please. Okay, let's hear from the in our in L. R. B. Good morning, Your Honors. And may it please the court. Elizabeth Campbell, representing the National Labor Relations Board. The case we have before us involves a landslide union election where the employer, rather than comply with the National Labor Relations Act and bargain with the duly elected union, claims that it was entitled to a hearing based on a single purported election impropriety. On the contrary, the board acted well within its wide discretion when it certified the results of the election without a hearing. Given that even if oak creams bare bones offer of proof were fully proven up at a hearing, it would not have been sufficient to show election misconduct occurred at all, let alone meet the high bar for setting aside the results of a presumptively valid election. Well, Miss Campbell, how do how do we know that right? Is your friend just said without a hearing? It's possible, at least that with the supervisory taint, it could spread through the supervisees across to other people. It's a multi factor test. Why not just grant a hearing? I think this court has been quite clear that a hearing is not a fishing expedition. Valley Bakery aside, multiple cases out of the Ninth Circuit have made it quite clear that the purpose of a hearing is not for the employer to reduce additional evidence. They have the burden of proof in in the offer of proof to come forward with prima facie case indicating that there was, you know, serious enough election misconduct that could have overturned the results of the election. Valley Bakery, if I might, I just fundamentally disagree with my colleague that it is applicable to this case. The holding there was that in very close cases where the employer can come forward with only hearsay evidence will then in those rare cases where it was just truly impossible for the employer to get direct evidence of misconduct, then a hearing should be held. In this case, not only was this not a close election, but they had all of the evidence that they would have needed to know what McCava actually did here because McCava herself was a supervisor. It wouldn't have taken them much time. It wouldn't have. It wasn't a very heavy ask to have them interview her, say that they would call her as a witness and say exactly what she did. It wouldn't have been difficult at all. Instead, they rely on this one piece of hearsay evidence that doesn't even show that she actually did pass out union cards, let alone that she did so in a manner that would have coerced or like spread through the unit, anything like that. Can I ask you, in the offer of proof, which is short, in your experience, how does this measure up to other offers of proof that the NLRB receives? In other words, are these typically short form documents or are you usually seeing ones that are more substantial than this? They're generally more substantial. This is an extremely bare bones offer of proof. The board's rules and regulations, 102.66C, as incorporated by 102.69A, require that the objector list the names of witnesses and summarize those witnesses' testimony. That does not mean just sort of conclusory stating what happened. And I mean, in this case, the regional director essentially had to what might those witnesses say. That is not the burden. They didn't even comply with the rules, let alone actually meet their burden. And again, with respect to Valley Bakery, that case simply provides a very small carve out to this court's general rule and requirement that these are not fishing expeditions. On the question of whether Makaba was a statutory supervisor, is there board authority that tells people how much they have to say about that issue? Because your friend on the other side said, well, we asserted she was a supervisor. We believe she was. Nobody was raising any issue with that. We didn't have to do more. Right. So the stipulation that's in the record, which your honors can read, lists a number of different positions that would be in the bargaining unit and also lists probably five, six, maybe seven different positions that would not be in the bargaining unit. That one of those is supervisor. There's also managerial clerks, guards, confidential employees. If a confidential employee, for example, were to be engaging in supervisory or I'm sorry, non supervisory, if a confidential employee who is not a supervisor but was excluded from the bargaining unit because they have access to the employer's confidential information was choosing to, you know, to engage in pro-union conduct, they could do that all they want. That would not be misconduct. The reality is what was in front of the regional director, which was the that she was, in fact, a supervisor. Actually, it suggested that it was in contention because they said that she improperly voted in the election. The regional regional regional director had no reason to believe. In fact, they do not even say in their offer of proof that this was stipulated to. They don't even give her even just that much that they're now claiming, oh, she should have. She should have known. They had no reason. The regional director had no reason to know that. All right. I guess the question is, did did Oakley have reason to know they needed to say more? Was there some board guidance that would have put them on notice that you can't just assert someone's a statutory supervisor? Otherwise, you run the risk that the board is going to look at that and say that's not enough. I mean, East Valley Glendora Hospital, I do think is on point on this issue. In that case, the Ninth Circuit held that saying someone was a statutory supervisor was not sufficient. You did need to go through and prove it. The stipulation may have been between the union and the employer. For example, there is no reason that the board needs to take that stipulation as fact. Just because the union agreed to disclude someone doesn't mean that their union solicitation would necessarily be coercive. The employer I mean, this is like the elements of a crime. What what what Oakley was essentially doing is saying, well, the jury just should have known that element of the crime. No, it supervisor, she engaged in pro-union conduct, that conduct was coercive, and the coercion was enough to overturn the results of a presumptively valid election. They didn't get to the first step. Now, that being said, the board nonetheless did give them the benefit of the doubt. They repeatedly say in their reply brief, you know, the board was making, you know, shouldn't have made an assumption one way. Actually, the board repeatedly made assumptions in their favor to make sure that this conduct wasn't coercive enough. They said, okay, even assuming she was a supervisor, we still don't find that the conduct was coercive. So if we'd like, if you'd like to talk about the harborside factors and how they didn't, they didn't meet any of those, I'd be happy to speak to that. I guess it would be helpful for me to take the Transcare case, for example, and distinguish the board's decision there where it seemed like it was operating on a little less than fully complete information and still provided a hearing. Sure, I mean, I think that case is distinguishable for a number of reasons. It was a close case, these cases that where the board sort of really says, listen, regional director, you, you, you let's, let's, let's give them a hearing, even though they didn't really comply with all of our rules. I think the board has the discretion to do that in really close cases, because the board wants to make sure that employees rights are protected. And that is what the board's requirement is in this, through this process. But in any event, I think it was really essential there that, that there was direct rather than hearsay evidence. That is not the case here. And the board has repeatedly said in Transcare and Holiday, in both, in both of those cases, the board is clear that the employer needs to suggest at the very least, so Transcare is an example where the board could put forward direct evidence of the misconduct. They didn't suggest that in their, in their offer of proof, they did not suggest that they would be able to put forward direct evidence of the misconduct. Transcare, you know, I think the board specifically said, the fact that they could come forward with direct evidence is really important here. And therefore, and since it's a close case, since it's a close election, and, you know, a few votes might have made a difference, we should hold a hearing. Well, the direct evidence there, I think, was, was a proffer of testimony of witnesses to the supervisor engaging in the misconduct. And here the proffer is testimony, right, hearsay testimony about what they'd heard the reported supervisor was doing that might be misconduct. Right. I mean, I think there the, the board said, at a minimum, the employer should identify witnesses and provide a description of the relevant information that they could be, that they could provide, which the employer did in Transcare. The employer did not do that here, and there was no reason that they, that they couldn't. McCabe was fully within their control, the two managers that she allegedly spoke to were fully in their control, so there's no real good excuse for why they might not have done that. Do you assign any import to the difference between soliciting and handing out union cards in terms of misconduct? We didn't brief that in this case, Your Honor. I understood, you know, I understood O'Keefe in suggesting that she may, even if she did solicit union cards, I think that is what the board assumed in going through the process. Even if she did, they still did not show that there was coercive misconduct, even getting to Prong Lawn of Harborside, even if she had solicited, solicited union cards from her own employees. But I think that Your Honor's correct at handing out union cards may not necessarily be the same as soliciting union cards. So it's something to consider. I think with respect to the fact that she only passed out union cards to seven employees, I think they never argued they couldn't get the information. Your Honor asked about the possible pervasive effect. They never suggested to the board, they never suggested to the regional  this sort of Valley Bakery argument that they're making now. That was never, you know, told to the regional director, you know, perhaps if they had said, we think this was really pervasive, we think there's a chance that this really impacted the unit. But we need to have a hearing on that issue, because we can't, you know, approach employees ourselves. They didn't say that to the regional director, unlike in Valley Bakery. Valley Bakery, I mean, the affidavit by the managerial employee makes it quite clear that employees were scared to come forward. But the number seven we're talking about, seven employees, that's not in the offer of proof, right? That's just what we know, the macabre, that's number of people she supervised? So the offer of proof did not say how many people she supervised. It's not in the record. You know, it wouldn't have been before the RD at all. She was outside of the four corners of the offer of proof, digging through the case file and figure out, okay, her title was dietary manager, who could a dietary manager maybe supervise? Again, this shows how far the board was willing to go to try to figure out, you know, were employees coerced here, the board did its absolute due diligence to try to make sure that this objection was not, you know, potentially legitimate, couldn't possibly have, you know, trying to figure out, even though it was the employer's burden, the board still sort of bent over backwards to say, okay, let's assume she was a supervisor, who might she have supervised? The RD guess, the regional director guess that she may have supervised seven employees. The employer has now, you know, said in its brief that it was seven employees that she, that she supervised. So the RD was correct in her guess. And she analyzed, you know, prong one and prong two of the harborside test based on that assumption. Even though, again, it was an assumption that, that she made in favor in the employer's favor for, you know, essentially doing them a favor. Because again, it's about employee rights, it's not actually about employer rights, you want to make sure that employees rights to vote for a through this process. And that's what the board has an obligation to protect through this process. And so they, and I think they did exactly that here. And they did so by denying a hearing, which the employer was not the objector was not entitled to hear. There's nothing else. Are there any additional questions? Your Honor, if I have I don't I don't think there are any Miss Campbell. And so unless you have anything further to offer, I think we can we can hear rebuttal. Okay. Um, for these reasons, the board respectfully requests full enforcement of its order. I thank you very much for your time today. Thank you, Miss Campbell. Mr. carp. A few quick points, please, Your Honor. Um, as to the offer of proof, yes, was relatively short. But it was enough for the regional director understand what our preferred testimony was on page 11 of the excerpts of record. Regional director wrote, she understood the testimony would be that on barrage and taft would testify that macabre told them she was passing out union cards to employees. There was discussion of of the two board cases, Trans Care and Holiday. I want to try to be clear what we cited those cases for the Trans Care case helps us because there the board required a hearing to resolve a union's objection to an election, even though there was no discussion at all that the evidence the objection was that employees whom the union characterized as managers and supervisors were unlawfully monitoring an election. But there was no discussion at all about what duties these these employees performed that made them statutory supervisors under the act. I think the reasonable implication is if there's no reason to know that there's gonna be dispute whether the employees who engaged in misconduct are supervisors, then the offer of proof doesn't have to include the evidence they would prefer to prove that their statutory supervisors in the Holiday Corporation case that supports us because it's similar to Valley Bakery in that the offer of proof was hearsay. The vice president would testify to employees told him that the union's business agent made coercive statements to them, and the board held the regional director erred in denying an evidentiary hearing because that hearsay was sufficient at the offer of proof stage to support a finding of misconduct. Mr Carp, I welcome your response to the point your friend made that as the employer, you had access to all these witnesses. Why couldn't you come up with a more specific proffer? Why would you need a hearing to correct? I take your point. These employees being the supervisors, particularly Makaba. Yes, we had access to Makaba. We were not able, unfortunately, to get her evidence into the offer of proof. So we were forced to rely on what we were able to obtain from the two other supervisors on Barrage and Taft about what she told them. Why wouldn't it be reasonable to expect um, something from your supervisor in the offer of proof directly? Um, it would have been great if we could. We only have five days. We're unable to get her uh, preferred testimony for the offer of proof. And how many employees do you allege that she supervised? Seven. I believe it's undisputed at this point that she supervised seven. Thank you. But as to the non supervisory employees, Valerie Valley Bakery, uh, says we have to be careful with them. The hearing is designed through a subpoena and cross examination to develop what evidence we can from them. Uh, one and one final point. My friend noted that one of our filings states that Makaba may have voted in the election. That was that was simply my friend is correct. There is a statement, uh, on the first page of our offer of proof that was simply a mistake. There's no dispute that Makaba did not vote in the election. So there was no indication that there was any dispute about whether or not she was a supervisor. She was excluded from the unit. We had no reason to know that that would be disputed. Yeah. If there are no further questions, I would ask the court to grant our petition and deny the board's cross petition. Okay. Thank you, Mr Carp. We'll thank both counsel for the briefing and argument. This matter is submitted.
judges: THOMAS, BRESS, JOHNSTONE